UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENZEN CULLEN, PERSONAL REPRESENTATIVE OF THE ESTATE OF LEO CULLEN<br>    Plaintiff<br>v.<br><br>WARDEN WILLIAM HYATTE, in his individual capacity, and<br><br>"JOHN DOE" Defendants 1-50, employees of the INDIANA DEPARTMENT OF CORRECTIONS (IDOC), and<br><br>VIAPATH TECHNOLOGIES, and<br><br>"JOHN ROE" Defendants 1-50, employees of VIAPATH TECHNOLOGIES | NO. 3:23-cv-918<br>JURY DEMANDED |

## **COMPLAINT FOR DAMAGES**

### **Introduction**

Leo Cullen was incarcerated in the Indiana State Department of Corrections (IDOC) Miami Facility. Warden Hyatte and his staff, agents, and/or employees were deliberately indifferent to Leo Cullen's safety by ignoring threats and violent attacks on Cullen. This deliberate indifference led to Cullen's murder in the Miami Correctional Facility.

ViaPath Technologies is a billion-dollar company that charges exploitative and usurious rates for phone calls and communications between people who are

1

incarcerated and their loved ones. ViaPath Technologies also monitors all communication ostensibly to ensure the safety of people who are incarcerated. ViaPath Technologies failed to adequately protect Leo Cullen; its negligence contributed to Leo Cullen's death.

## Jurisdiction

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.
2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events described herein occurred in the northern District of Indiana.
3. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.
4. This suit is timely filed under the applicable state and federal limitations periods.
5. All other procedural prerequisites to filing this suit have been met.

## Parties

6. Jenzen Cullen is the personal representative of the Estate of Leo Cullen, his brother, who was incarcerated at the Miami Correctional Facility until he was murdered on November 17, 2021.
7. William Hyatte, "Warden Hyatte" is the duly appointed Warden of the Miami Correctional Facility and is sued in his individual capacity. Mr. Hyatte can be served at 3038 W. 850 S. Bunker Hill, IN 46914.

8. John Does 1-50, employees of the Indiana Department of Corrections (IDOC), are or were employees of IDOC tasked with monitoring communications between incarcerated persons and their friends and families. They can be served at the Facility's address, listed above.

9. ViaPath Technologies is a Virginia corporation that contracts with the Indiana Department of Corrections to provide phone services and video "visitation" services for incarcerated people.

10. ViaPath Technologies can be served at its corporate office located at 3120 Fairview Park Dr Ste 300, Falls Church, VA 22042.

11. John Roe Defendants 1-50 are or were employees of the ViaPath Technologies who are charged with monitoring inmate communications. John Roe Defendants can be served at ViaPath Technologies' Virginia Headquarters.

**Facts**

12. On November 17, 2021, Leo Cullen was in the custody of the State of Indiana at Miami Correctional Facility.

13. Leo Cullen was murdered by other incarcerated people.

14. The suspects in Leo Cullen's death include Milton Gonzalez, Arturo Aguilar, Juan Torres, Sergio Villanueva and William Paz. All are charged with murder and their cases are pending in the Miami County Circuit Court in Indiana.

15. Upon information and belief, Leo Cullen had been repeatedly threatened by various members of the Surenos 13 Gang, and then attacked on September 4, 2020.

16. This altercation was stopped by IDOC Sergeant Megan Hensley, who then authored a report about the attack. See Exhibit 1 – Hensley's "Report of Conduct."

17. Leo Cullen wrote an Offender Grievance, stating that he was "jumped" and all of his things were stolen. See Exhibit 2 – 9/12/2020 Grievance.

18. On September 9, 2020 and October 5, 2020, Leo Cullen informed IDOC officials via the grievance system that he had been attacked and was in fear for his life. See Exhibit 3 - Grievances.

19. Leo Cullen also communicated his physical safety concern to his brother, Jenzen Cullen.

20. Jenzen Cullen reported the safety concerns to IDOC, as well as the Warden's office via phone calls.

21. Defendant Indiana Department of Corrections employs persons full time to monitor inmate communications.

22. Indiana Department of Corrections pays third-party contractors from ViaPath Technologies to read all incoming and outgoing mail and email from incarcerated people in IDOC's custody.

23. Indiana Department of Corrections and/or ViaPath Technologies reads all inmate mail and emails.

24. Indiana Department of Corrections and/or ViaPath Technologies even reads communications between people in IDOC's custody and their lawyers.

25. Indiana Department of Corrections and/or ViaPath Technologies monitor all phone calls to which an incarcerated person in IDOC's custody is a party.

26. One of the purposes of this monitoring is to ensure that the prisons run by the Indiana Department of Corrections, including the Miami prison, are safe.

27. One of the purposes of this monitoring is to review communications to and from incarcerated people for threats of violence.

28. Leo Cullen regularly contacted his brother, Jenzen Cullen, via J-Pay and Core Link, service providers that the IDOC has contracted with to monitor communications, to specifically relay his concerns about his physical safety. See Exhibit 4 – Emails to Jenzen Cullen from Leo Cullen.

29. Jenzen Cullen and other members of his family discussed Leo Cullen's safety concerns with him in recorded calls on ViaPath Technologies phone system.

30. Both Leo and Jenzen Cullen paid outrageous amounts to ViaPath Technologies to communicate with each other.

31. ViaPath Technologies knew that Jenzen and Leo were in contact with each other.

32. The Indiana Department of Corrections knew that Jenzen and Leo were in contact with each other.

33. Warden Hyatte and other IDOC officials have a duty to ensure that people incarcerated in IDOC facilities are kept in physically safe conditions.

34. Warden Hyatte or others at his direction monitor inmate communications.

35. All of Jenzen Cullen's calls with his brother were monitored and recorded by ViaPath Technologies and/or Warden Hyatte, and/or other employees of the Indiana Department of Corrections.

36. Based on the previous violent attack against Leo Cullen, and both Leo Cullen and Jenzen Cullen repeatedly reporting this to IDOC officials, IDOC officials and Warden Hyatte knew it was likely that he would be attacked again.

37. Warden Hyatte was explicitly aware of other physical attacks against Leo Cullen.

38. All other Defendants were aware of past violent attacks against Leo Cullen.

39. Defendants were aware of Leo Cullen's family's concerns of future violence.

40. Upon information and belief, Defendants were aware of specific threats to Leo Cullen's safety posed by Milton Gonzalez, Arturo Aguilar, Juan Torres, Sergio Villanueva and/or William Paz.

41. Upon information and belief, Defendants were aware of specific threats to Leo Cullen's safety posed by other members of the Sureno 13 gang.

42. Mr. Jenzen Cullen's pleas were ignored, and nothing was done to keep Leo Cullen safe.

43. Leo Cullen was murdered at the Miami Correctional Facility on November 17, 2021.

44. Due to the actions and inactions of the prison's officials, Jenzen Cullen has experienced pain, suffering and the loss of a loved one.

45. Defendants acted maliciously, recklessly, and with deliberate indifference to Leo Cullen's rights and are liable for punitive damages.

46. At all times, Defendants acted under color of state law.

## Causes of Action

### COUNT 1- VIOLATION OF 8ᵀᴴ AMENDMENT RIGHT – FAILURE TO PROTECT and/or KNOWINGLY EXPOSING AN INMATE TO VIOLENCE (42 USC § 1983) (All Defendants)

47. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

48. Leo Cullen was in the custody of the State of Indiana at all times relevant to this Complaint.

49. Defendants had been warned multiple times of the threats of violence were made against Leo Cullen, an inmate in their care.

50. Warden Hyatte and other IDOC officials knew that Leo Cullen faced a substantial risk of serious harm from other inmates, including but not limited to those individuals charged with Cullen's murder and specified in this Complaint.

51. Warden Hyatte and other IDOC officials knew that Leo Cullen faced a substantial risk of serious harm from other inmates, including but not limited to members of the Sureno 13 gang.

52. ViaPath Technologies and its employees knew that Mr. Cullen had written to his family to state that he had safety concerns.

53. Warden Hyatte, other IDOC officials, and/or ViaPath Technologies and its employees disregarded the known, substantial risks described above by failing to respond in an objectively reasonable manner.

54. Upon information and belief, not only did Warden Hyatte and other IDOC officials know of facts from which an inference of a serious risk of harm to Leo Cullen could be drawn, but they actually drew that inference, and thus acted both subjectively and objectively unreasonably within the meaning of the Eighth Amendment.

55. Defendants either were deliberately indifferent to the substantial risk posed to Leo Cullen's safety and/or maliciously ignored that risk and did not protect Leo Cullen from these attacks that ultimately ended in his murder.

56. An in-custody murder of a person incarcerated by IDOC that results from the deliberate indifference of IDOC officials is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

57. Due to the Defendants' malicious ignorance and/or deliberate indifference, and their consequential violation of Leo Cullen's Eighth Amendment right to be free of cruel and unusual punishment, Leo Cullen was murdered and Jenzen Cullen has suffered damages.

### COUNT 2 – ADULT WRONGFUL DEATH (I.C. § 34-23-1-1)
### (All Defendants)

58. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

59. Leo Cullen's death was the result of the wrongful acts or omissions of each, some, or all Defendants.

60. At the time of his death Leo Cullen had several minor children.

61. Plaintiff Jenzen Cullen had a genuine, substantial and ongoing relationship with Leo Cullen.

62. Plaintiff Jenzen Cullen and Leo Cullen's minor children are entitled to damages under Indiana's Wrongful Death statute (I.C. 34-23-1-1).

**COUNT 3 - NEGLIGENCE (Against ViaPath Technologies and John Roes 1-50)**

63. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

64. ViaPath Technologies and John Roe Defendants assumed a duty to protect Leo Cullen by monitoring his communications.

65. ViaPath Technologies and John Roe Defendants knew or should have known of the past violent attacks against Leo Cullen.

66. ViaPath Technologies and John Roe Defendants knew or should have known of further impending violent attacks against Leo Cullen before those attacks occurred.

67. ViaPath Technologies and John Roe Defendants knew or should have known that Leo Cullen's life was in danger, such that they could have acted to prevent Cullen's murder.

68. John Roe Defendants and the ViaPath Technologies were negligent in monitoring inmate communications and/or responding to threats therein.

69. That failure contributed to Leo Cullen being kept in unsafe conditions which ultimately resulted in his death.

70. Defendants breached their duty to Leo Cullen and that breach resulted in his pain, suffering, emotional anguish, and death.

**Request for Relief**

71. Plaintiff therefore requests that this Court:

    a. accept jurisdiction of this case and set it for hearing at the earliest opportunity;

    b. award Plaintiff compensatory damages;

    c. award punitive damages against Defendants;

    d. award Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable provision; and

    e. award any and all other proper relief;

    f. Plaintiff demands a jury trial on all counts.

Respectfully submitted,

*s/Jonathan Little*
Jonathan Little
Annmarie Alonso
Saeed & Little, LLP
133 W. Market St. #189
Indianapolis, IN 46204
jon@sllawfirm.com
annie@sllawfirm.com