UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENZEN CULLEN,

    Plaintiff,

    v.

WILLIAM HYATTE, et al.,

    Defendants.

Case No. 3:23-CV-918-CCB-SJF

## ORDER

Before the Court is Defendant ViaPath Technologies' ("ViaPath") Motion to Dismiss Plaintiff Jenzen Cullen's ("Jenzen"), as personal representative for the estate of Leo Cullen ("Leo"), amended complaint (ECF 35). Based on the applicable law, facts, and arguments, the Motion to Dismiss for Failure to State a Claim is **DENIED**.

### I.    RELEVANT BACKGROUND

Leo was in the custody of the State of Indiana at Miami Correctional Facility ("MCF") in September 2020. (ECF 27 at 4). After being threatened repeatedly, on September 4, 2020, Leo was "jumped" by several other incarcerated individuals who assaulted him and stole his property. (ECF 27-1, 27-2). Two days later, on September 6, 2020, Leo expressed concerns for his safety to his brother, Jenzen, stating that he did not know what to do, he was scared, and he needed help keeping himself safe. (ECF 27-4). In this message to his brother, Leo told Jenzen that he had written for help to counselors and officers but only received one response. *Id.*

Leo filled out a "Request for Interview" form on September 9, 2020, stating that he was in fear for his life because of a gang called "Surenos 13" ("Surenos"). (ECF 27-3). Members of Surenos are believed to have attacked Leo on September 4. (ECF 27 at 4). On an "Offender Grievance" document completed by Leo on September 12, 2020, Leo asked Indiana Department of Correction ("IDOC") officials to transfer him immediately and to help him with his situation. (ECF 21-2). On October 5, 2020, Leo completed another "Request for Interview" form, restating his concern for his life and naming two Surenos members responsible for the attack against him in September and who were still causing him to fear for his life. (ECF 27-3). Both the "Request for Interview" and the "Offender Grievance" forms are part of the grievance procedure for those incarcerated in IDOC. (ECF 27 at 4). On March 5, 2021, Leo told Jenzen that they were on lockdown because an incarcerated individual was murdered by another incarcerated person. (ECF 27-4 at 4). Jenzen reported his concerns for Leo's safety to both IDOC and the Warden's office over the phone several times. (*Id.* at 5). On November 17, 2021, Leo was attacked again by Surenos' members. (ECF 27 at 4). Leo later died from his injuries. (*Id.*).

All conversations between Leo and members of his family, including between Leo and Jenzen, regarding his safety were recorded on the ViaPath communication system. (*Id.* at 6). IDOC employs full time staff to monitor the incoming and outgoing physical and electronic communications to and from incarcerated individuals. *(Id.* at 5*).* IDOC also contracts with third-party entities, like ViaPath, to read all incoming and outgoing communications to and from incarcerated individuals. (*Id.*). This monitoring is

2

intended to ensure the prisons are safe and free from violence by and against incarcerated individuals. (*Id*.).

In March 2024, Jenzen, as personal representative of Leo's estate, filed a First Amended Complaint alleging claims including violation of the 8th Amendment for failure to protect/knowingly exposing an incarcerated person to violence, wrongful death, negligence, and breach of contract. ViaPath filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(6) asserting that Plaintiff's complaint does not state a claim for which relief can be granted.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the … claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

3

When meeting this threshold, however, complaints "do not need to contain elaborate factual recitations." *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Rather, at the motion to dismiss stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* A court cannot dismiss a complaint for failure to state a claim if, taking the facts pleaded as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The court, however, is "not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762–63 (N.D. Ill. 2011).

### III.   ANALYSIS

#### 1.   Materials Outside Complaint

ViaPath's Motion to Dismiss included a few attached documents: Professional Service Contract EDS #D12-1-090 with IDOC, Professional Service Contract EDS #D12-19-17055 with IDOC, and a declaration from ViaPath's counsel stating the "true and correct copies" of the contracts are attached. (ECF 36-1, 36-2, 36-3 at 3). Plaintiff objects to the inclusion of these documents at the motion to dismiss stage, contending that "the motion must be treated as one for summary judgment under Rule 56," if matters beyond the pleadings are presented to the court. (ECF 37 at 15). As noted by ViaPath, "[d]ocuments not attached to the complaint may be considered if they are referred to in the complaint, are concededly authentic and are central to the plaintiff's claim." *Hecker v. Deere & Co*, 496 F. Supp. 2d 967, 972 (W.D. Wisc. 2007) (citing *Tierney v. Vahle,* 304

4

F.3d 734, 738 (7th Cir.2002)). The contracts are referred to in the complaint, are of undisputed authenticity, are central to Plaintiff's claim, and are publicly available documents, therefore, it is appropriate to consider them as part of the complaint on a motion to dismiss. *Id.*

Plaintiff does concede that "documents referred to in a complaint which are central to plaintiff's claim can be considered in a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment." (ECF 37 at 16). Plaintiff, however, argues that the contracts provided do not reflect the entire relevant contractual relationship between ViaPath and IDOC and should not be treated as such. (*Id.* at 16-17). Plaintiff's argument that the few contracts provided by ViaPath does not govern the entire case is persuasive. (*Id.* at 17).

### 2.   Count I Violation of 8th Amendment Right (42 U.SC. § 1983)

Plaintiff has asserted a claim against ViaPath under 42 U.SC. § 1983 arising from ViaPath allegedly unconstitutionally failing to protect and/or knowingly exposing an incarcerated person to violence (Count I). (ECF 27 at 10). To state a claim under § 1983, a plaintiff must allege two elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). A defendant acting under the color of state law is a jurisdictional requisite for a § 1983 action. *West v. Atkins*, 487 U.S. 42, 48 (1988). ViaPath moves to dismiss Plaintiff's § 1983 claim on the basis that Plaintiff has failed to plausibly allege ViaPath was acting under the color of state law.

5

For private conduct to constitute state action, a court must find such a "close nexus between the State and the challenged action" that the challenged action "may be fairly treated as that of the State itself." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009) (citing *Jackson,* 419 U.S. at 351, 95 S.Ct. 449). The Supreme Court recognizes certain instances where the "acts of a private party are fairly attributable to the state because the party has acted in concert with state actors." *Id.* Specifically, the Court has found private conduct takes on the color of law when

> "private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights, where the state compels the discriminatory action, when the state controls a nominally private entity, when it is entwined with its management or control, when the state delegates a public function to a private entity, or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself."

*Hallinan v. Fraternal Ord. of Police of Chi. Lodge No.7,* 570 F.3d 811, 815-16 (7th Cir. 2009). The situations listed above do not outline factors or a test. Rather, the situations serve as examples of outcomes in various fact-based assessments. *Id.* (citing *Brentwood,* 531 U.S. at 295).

ViaPath argues that courts around the country have "consistently" found that ViaPath "is not a state actor simply because it contracts with IDOC to provide communication services for inmates." (ECF 36 at 5). The cases cited by ViaPath to support this contention are largely pro se incarcerated litigants suing communications providers solely based on a contractual relationship with the state for either charging incarcerated individuals excessively high rates or precluding them from making international calls. (*Id.* at 5-6). *See* Anderson v. Sposato, Case No. 11–CV–5663, 2013 U.S.

6

Dist. LEXIS 69000, at *11, 13 (E.D.N.Y. May 9, 2013) (the fact that the private entity provided telephone services to incarcerated individuals pursuant to a contract alone is insufficient to transform the private entity into a state actor under § 1983); Evans v. Skolnik, Case No. 3:08–cv–00353, 2009 U.S. Dist. LEXIS 104427, at *10 (D. Nev. Nov. 5, 2009) (the contractual relationship between the telephone service provider and the state was not enough to convert the private party into a state actor); McNeil v. Glob. Tel-Link, Case No. 3:15-cv-01243, 2017 U.S. Dist. LEXIS 187470, at *1 (M.D. Pa. Nov. 13, 2017) (alleging defendants charged excessively high long-distance telephone rates); Breland v. Evercom Sys., Inc., Case No. 7:09–cv–60, 2009 U.S. Dist. LEXIS 44485, at *4 (M.D. Ga. May 27, 2009) (alleging defendants charged excessive fees for inadequate services); Chico-Polo v. Embarq Payphone Servs., Inc., Case No. 11-1427, 2012 U.S. App. LEXIS 27237, at *4 (6th Cir. Mar. 15, 2012) (arguing defendants deprived plaintiffs of constitutional rights by not allowing calls to Colombia and Nicaragua from prison) (citing Iswed v. Caruso, Case No. 1:08–cv–1118, 2009 U.S. Dist. LEXIS 110158, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009)); Belton v. SecurusTech.net, Case No. 13–CV–4850, 2014 U.S. Dist. LEXIS 15694, at *16 (E.D.N.Y. Feb. 7, 2014) (alleging the denial of adequate telephone access during plaintiff's incarceration violated his constitutional rights).

      Plaintiff alleges ViaPath should be treated as a state actor for more than the mere provision of communication services to IDOC. Plaintiff is not suing ViaPath for excessively high rates or for preventing Leo from completing international calls. Rather, Plaintiff plausibly alleges that ViaPath is "pervasively entwined with the state of

7

Indiana, in that it is extensively involved in the monitoring of communications to and from incarcerated people." (ECF 27 at 7). Plaintiff further cites to one of the contracts where ViaPath provides "live monitoring" and "call detail reporting tool" services to IDOC and requires states with which it contracts to hire ViaPath's forensic analysts to monitor and investigate recorded communications from incarcerated individuals. (ECF 37 at 6-7) (ECF 36-1 at 47).

These allegations, taken as true, are enough "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). The Motion to Dismiss is **DENIED** as to Count I.

### 3.    Count II Wrongful Death (I.C. § 34-23-1-1) and Count III Negligence

Plaintiff has also asserted a claim under Indiana Code § 34-23-1-1 arising from ViaPath allegedly causing Leo's death through wrongful acts or omissions (Count II). (ECF 27 at 11-12). I.C. § 34-23-1-1 allows the personal representative of the decedent to maintain an action against the person or persons who cause the death by a wrongful act or omission if the decedent might have maintained an action against the person or person had they survived. (I.C. § 34-23-1-1). Jenzen, as personal representative of Leo's estate, is bringing claims for wrongful death and negligence against ViaPath.

To bring a claim on a theory of negligence, as Plaintiff does, the following elements must be established: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Stachowski v. Est. of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018). The issue before the Court is whether ViaPath had a duty to prevent Leo's death, which is generally a

question of law. *Hays v. Bardasian*, 615 F. Supp. 2d 796 (N.D. Ind. 2009) (citing *Franklin v. Benock,* 722 N.E.2d 874, 878 (Ind. Ct. App 2000)). In determining whether a defendant owed a duty to a plaintiff, courts consider three factors: the relationship between the parties, the reasonable foreseeability of harm, and public policy concerns. *Id.*

ViaPath argues that Plaintiff fails to allege facts supporting the argument that ViaPath owed Leo a duty, stating that "Plaintiff provides no allegations supporting the contention that ViaPath assumed any protective duty over Miami Correctional Facility or any person incarcerated or working within it." (ECF 36 at 9-10) Plaintiff, however, argues that ViaPath "assumed a duty to protect incarcerated people, including Leo Cullen, by monitoring their communications…to ensure that any threats or other risks identified in those communications were adequately addressed." (ECF 27 at 12-13). Plaintiff points to language from one of the contracts showing ViaPath possesses the "*exclusive* responsibility of monitoring and recording communications in the Miami correctional facility, and using the 'data' from those communications to conduct 'forensic analysis' and to create 'actionable intelligence in support of the prevention of crime within the correctional institutions.'" (ECF 37 at 12) (ECF 36-1 at 28, 34). Plaintiff further alleges that, based on this monitoring, ViaPath knew or should've known of the past physical attacks and continued future threats to Leo's life from other incarcerated individuals. (ECF 27 at 13). In failing to respond to these threats, Plaintiff argues that ViaPath was negligent in preventing the fatal attack against Leo in November 2021. (*Id.*).

In analyzing whether ViaPath owed Leo a duty at the motion to dismiss stage, Plaintiff need only allege enough facts to plausibly suggest entitlement to relief. It is possible, beyond mere speculation, that discovery could reveal that ViaPath participated in the reviewing and monitoring of communications to and from individuals incarcerated at MCF, and therefore ViaPath assumed a duty to keep incarcerated individuals safe from physical violence or death. Plaintiff has met this threshold as to the claims for wrongful death and negligence, therefore ViaPath's Motion to Dismiss is **DENIED** as to Counts II and III. (ECF 35).

### 4. Count IV Breach of Contract

Plaintiff also alleged breach of contract for ViaPath's alleged failure to adequately monitor the communications of individuals incarcerated at MCF. (ECF 27 at 14). To bring a claim for breach of contract, a plaintiff must "prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). Plaintiff is not a party to any of the contracts at issue and therefore relies on third-party beneficiary status to bring a claim under breach of contract. Under Indiana law, a third party may enforce a contract by showing that the parties intended to directly benefit the third party. *Bowman v. Int'l Bus. Machines Corp.*, 853 F. Supp. 2d 766, 769 (S.D. Ind. 2012) (citing *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th Cir.2002)). A third-party beneficiary contract is thus formed when "(1) the parties to the contract intend to benefit a third party, (2) the contract imposes a duty on one of the parties in favor of the third party, and (3) the performance of the terms of the contract directly benefits

10

the third party." *Id.* (*See also Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244 (7th Cir. 1994)).

Plaintiff contends that ViaPath and IDOC "intended to grant third-party rights to people incarcerated in facilities serviced by ViaPath, including Leo Cullen." (ECF 27 at 14). ViaPath, on the other hand, argues that "neither of ViaPath's contracts with IDOC show, or even suggest, an imposition of a duty on ViaPath to monitor inmate communications, report threats against inmates, or undertake any act in response to the content of inmate communications." (ECF 36 at 11). Plaintiff points to language from the contracts, such as ViaPath describing the "Data IQ data analytics platform" as supporting the "prevention of crime within the correctional institutions," and ViaPath's website, saying ViaPath works to "increase the safety of correctional facilities," to support the theory that individuals incarcerated in IDOC were contemplated as third-party beneficiaries of the contracts between ViaPath and IDOC. (ECF 36-1 at 28) (ECF 37 at 14). Plaintiff further alleges that in addition to the "forensic analysis" and "actionable intelligence" to prevent crime language in the contract submitted at ECF 36-1, the contract also suggests that in another contract not included by ViaPath IDOC may have even contracted for a "hot alert" system. (ECF 37 at 12, 16-17) (ECF 36-1 at 47). This system could have potentially imposed a duty on ViaPath to monitor communications and act for the prevention of violence against incarcerated individuals. (*Id.*). Based on these allegations, Plaintiff has met the motion to dismiss threshold in pleading enough facts to push the claims "across the line from conceivable

11

to plausible." *Twombly*, 550 U.S. at 555, 570. ViaPath's Motion to Dismiss is **DENIED** as to Count IV.

### IV. CONCLUSION

For the reasons discussed above, ViaPath's Motion to Dismiss is **DENIED** (ECF 35).

SO ORDERED on March 14, 2025.

    /s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT